## No. A-CV-07-85

# Court of Appeals of the Navajo Nation

**McCabe, Nelson J., Chief Justice,** *Petitioner*

*vs.*

**The Honorable Robert B. Walters,** *Respondent*

Decided May 28, 1985

## OPINION

*Before Wilson, Special Presiding Justice, Kirk and Yellowhair, Special Associate Justices.*

There are two issues that must be addressed by the Court in this prohibition proceeding. The first is whether the appointment of a retired judge as Acting Chief Justice or Special Presiding Judge is authorized under Navajo Tribal law. The second issue is whether Respondent, the Honorable Robert B. Walters, should be permanently prohibited from further participation in the criminal proceedings below involving the Petitioner.

The following is the summary of facts in this matter:

1) On March 8, 1985, criminal charges alleging three offenses of making or permitting a false tribal voucher, theft, and fraud in violation of the Navajo criminal code, were filed with the Tuba City District Court against the Petitioner, Nelson J. McCabe. The Petitioner is the Chief Justice of the Navajo Nation, the chief judicial officer of the Judicial Branch. A criminal summons was issued that same day, directing the Petitioner to appear for arraignment on March 11, 1985.

2) On March 11, 1985, the Petitioner appeared before the Honorable Robert B. Walters for arraignment, entered a plea of not guilty to the criminal charges, and was released on his own recognizance.

3) On March 14, 1985, the Honorable Judge Walters apparently on his own motion, modified the terms of Petitioner's release order and as a condition of his personal recognizance release, ordered the Petitioner relieved from performing his judicial duties and / or exercising judicial functions of his position as Chief Justice of the Navajo Court of Appeals. There was no written motion filed with the Court, nor was notice provided to Petitioner.

4) On March 18, 1985, the Petitioner filed an Application for Writ of Prohibition with the Court of Appeals, requesting that the Respondent be restrained from taking any further action in Petitioner's criminal cases and

all other related criminal proceedings involving Judicial branch personnel, on the grounds that the Respondent exceeded the court's jurisdiction and that the Respondent was biased. That same day the Petitioner, as Chief Justice, issued the Writ of Prohibition granting the relief requested in the Application, and also restrained the Director of the Division of Public Safety from executing any orders of the Tuba City District Court in the criminal cases cited.

5) On March 20, 1985, the Petitioner, as Chief Justice, appointed a retired judge, Honorable Dean Wilson, as special presiding justice of the Court of Appeals for all the criminal proceedings pending in the Tuba City District Court, involving judicial staff personnel, including the Petitioner. The Chief Justice appointed a retired judge due to the apparent conflict of interest that existed for all district judges in being called as witnesses in the criminal cases.

6) On Friday, March 22, 1985, at 5:00 p.m., the Respondent issued a bench warrant for Petitioner's arrest, for violation of the Order modifying the conditions of his release, in that Petitioner continued to perform his official duties as the Chief Justice of the Navajo Nation. The warrant was unsuccessfully executed by tribal police officers on Sunday afternoon, March 24, 1985, at Petitioner's mother's residence.

7) On March 25, 1985, Petitioner filed with the Court of Appeals, a Motion for an Order Affirming the Writ of Prohibition, and a Petition for An Order to Show Cause against the tribal police officers who attempted to execute the arrest warrant.

8) On March 27, 1985, the Honorable Dean Wilson vacated the Writ of Prohibition, dated March 18, 1985, and issued an Alternative Writ of Prohibition restraining the Honorable Robert Walters from, in any way, restricting the Chief Justice from performing the duties of his office.

9) On April 3, 1985, Respondent filed a Motion to Convene a Three-Judge Panel of the Court of Appeals and to Rescind the Appointment of Judge Wilson.

10) On April 12, 1985, the Petitioner filed with the Tuba City District Court a Motion to Disqualify Respondent.

11) On April 12, 1985, twenty-two criminal defendants filed with the Court of Appeals an Application for Leave of Court to Include Similarly Situated Navajo Defendants in the Writ of Prohibition requesting that the Respondent be restrained from taking any action in their criminal proceedings, pending in the Tuba City District Court.

12) On April 23, 1985, the Honorable Dean Wilson, issued an Order dismissing the prohibition proceeding and vacating the hearing set for April 29, 1985, to become effective upon the Honorable Robert Walters' approval of an order disqualifying himself from Petitioner's criminal cases. To date, no such disqualification order has been approved by Respondent.

13) On April 29, 1985, a three-judge panel of the Court of Appeals, composed of three retired judges, held a hearing on the Petitioner's Application for Writ of Prohibition and Motion to Affirm the Writ of Prohibition.

Addressing the first issue, Respondent claims that the Navajo Tribal Code requires that an Acting Chief Justice or Special Presiding Justice must be appointed from among the district judges and that the appointment of Honorable Dean Wilson, a retired judge, as Special Presiding Justice of the Court of Appeals in the prohibition proceeding is improper. Respondent relies on 7 N.T.C. § 372 (1977 Edition) which provides in pertinent part:

"The Chief Justice of the Navajo Tribe shall designate one judge of the Tribal Court to act as Chief Justice whenever the Chief Justice is absent from the territorial jurisdiction of the Trial Court, is on vacation, ill or otherwise unable to perform the duties of his office, or whenever the office of the Chief Justice is vacant. . . ."

This Court does not dispute Respondent's interpretation of the mandate of 7 N.T.C. § 372. However, the instant case presents a situation not contemplated when that section was adopted. That is, when all district judges are listed as witnesses in the trial court proceedings, who then, pursuant to 7 N.T.C. § 372, is qualified for appointment as Acting Chief Justice of the Court of Appeals to hear matters arising before the appellate court. Section 372 does not address this situation. Absent a specific statutory provision, the Court shall consider the tribal code sections dealing with the judiciary branch as a whole, to determine the legislative intent for guidance in this matter. It is clear that the Navajo Tribal Council, by enacting 7 N.T.C. § 372, intended that an Acting Chief Justice be appointed first from among the district judges. Yet, to rely solely upon Section 372 in the instant case would mean that no Acting Justice could be appointed, given the conflict of interest that exists for all the district judges in being called as witnesses in the trial below. Such a result could not have been intended by the Council. Where a strict construction of tribal law would lead to an absurd result, the Court must balance the effects of a literal interpretation against the legislative intent and a reasonable means to accomplish it. In reviewing the provisions of Title 7, the Council established a secondary pool of judges from which an appointment can be made. Although not specifically authorizing appointment as Acting Chief Justice, 7 N.T.C. § 353 (i) allows for appointment of retired judges by the Chief Justice, as follows:

"Retired judges shall be ineligible to hear any case in any court of the Navajo Tribe, unless the Chief Justice shall, with the consent of the retired judge involved, call him back for temporary duty to help relieve congestion in the docket of the Navajo courts."

It is within the province of the judiciary to construe and interpret legislation and the terms used therein. It is the Court's determination that congestion exists in the Court of Appeals when no appointment to the Court of Appeals can be made pursuant to 7 N.T.C. § 372, thereby authorizing appointment from the pool of retired judges pursuant to 7 N.T.C. § 353 (i). In considering the provisions of Title 7 as a whole, the Court holds that the appointment of Honorable Dean Wilson, a retired judge, as Acting Chief Justice or Special Presiding Justice in this procceding is authorized by Navajo Tribal law and is therefore proper.

With respect to the two remaining appointments of retired judges to this three-panel Court of Appeals panel, 7 N.T.C. § 301 establishes a Navajo Tribal Court of Appeals to consist of a Chief Justice and two Associate Justices. Appointment of Associate Justices are to be by the Chairman of the Navajo Tribal Council with the consent of the Navajo Tribal Council from among those recommended by the Judiciary Committee. This particular section became effective in 1978, but to date the Chairman has never exercised his authority under this provision and thus, there have been no appointments of Associate Justices of the Court of Appeals pursuant to this section. Were this Court to adopt a strict and literal interpretation of Section 301, then a logical extension of that analysis can only result in no properly constituted Court of Appeals since May 4, 1978.

It is clear that the Navajo Tribal Council intended to create a three-judge Court of Appeals, with a Chief Justice as its presiding judge. It is also clear that the three Justices of the Court of Appeals were to be permanent appointments, separate and distinct from the judges of the district courts. The pre-1978 provision dealing with the Court of Appeals established only the position of the Chief Justice as a permanent Court of Appeals position and provided that the two Associate Justices be selected from among the district judges. 7 N.T.C. § 301, prior law.

In the situation at hand, where the Executive branch has failed to act, does it necessarily follow that there can be no Court of Appeals appointments authorized under tribal law. This Court thinks not. Absent executive action authorized under tribal law, the Chief Justice in administering the Court of Appeals and as the chief judicial officer can properly look to prior law as guidance for appointments of associate justices to the Court of Appeals. In fact, the Chief Justice has since 1978 utilized 7 N.T.C. § 301, enacted prior to 1978, as the basis for appointing tribal judges as justices to the Court of Appeals. To have done otherwise would have resulted in appellate cases pending before the Court of Appeals for six years without any final decision.

It can reasonably be inferred that the Navajo Tribal Council ratified this interpretation, else it would have appropriated the necessary funds to allow for appointment of Justices by the Chairman pursuant to the 1978

amended provisions. Application of the pre-1978 Section 301 is a reasonable means of accomplishing the Tribal Council's purpose that there be established a 3-judge Court of Appeals.

However, application of Section 301, whether under post-1978 or pre-1978 law, does not dispose of the issue altogether. In the instant case, authority for appointment of retired judges to the Court of Appeals rests on 7 N.T.C. § 353 (i) and its application is identical to that discussed above relating to Judge Wilson's appointment. Thus, the appointment of retired judges to the Court of Appeals in this proceeding is authorized under tribal law and is proper.

In now considering the second issue presented to the Court—whether the Respondent should be permanently prohibited from further participation in Petitioner's criminal proceeding now pending before the Tuba City District Court, the Court feels it necessary to establish the parameters of this prohibition proceeding.

To begin, Petitioner is the only party who has filed Application for Writ of Prohibition *and* has standing to request this remedy; therefore, the Court can only consider the issues raised by Petitioner and Respondent. The Court will not consider the propriety of permanently prohibiting Respondent's action in the criminal proceedings involving judicial personnel other than Petitioner, presently pending before the Tuba City District Court, for the reason that none of those individuals have requested relief from this Court.

The Court will also not consider the alleged violations by Petitioner of the Navajo Code of Judicial Conduct due to the recent Navajo Tribal Council action ordering the suspension of the Petitioner as Chief Justice, thereby making this issue moot. See Resolution of the Navajo Tribal Council, No. CMY-46-85, May 9, 1985.

In addition, the Application for Leave of Court to Include Similarly Situated Navajo Defendants in the Writ of Prohibition, filed by the twenty-two criminal defendants, charged with various criminal violations in the Tuba City District Court, is denied for failure to establish grounds entitling them to the relief requested and they have an adequate remedy at law by means of an appeal.

A Writ of Prohibition is a discretionary writ and is appropriately issued where the trial court is proceeding without or in excess of its jurisdiction, or has abused its discretion in exercising its function over matters within its authority to decide and Petitioner has no plain, speedy, and adequate remedy at law. 63A Am. Jur. 2d, Prohibition § 133. This Court's authority to issue a writ of prohibition is established at 7 N.T.C. § 302, which grants to the Court original jurisdiction to hear cases where a special writ or order is necessary or proper to carry out its jurisdiction, and supervisory jurisdiction over a trial court acting beyond its jurisdiction. *Begay v.*

*Honorable Tom Tso,* 4 Nav. R. 122 (1983). This proceeding does not involve a trial court acting without jurisdiction, rather the dispute between the parties centers on a trial court's action in excess of its jurisdiction and its abuse of discretion. There has been no objection by Petitioner to the trial court's jurisdiction over the subject matter and the parties in the criminal proceeding below. Petitioner claims that Respondent exceeded the district court's criminal jurisdiction by ordering Petitioner to temporarily step down from his position as Chief Justice of the Navajo Nation as a condition of release on his personal recognizance.

It is Respondent's position that the release terms are authorized under 17 N.T.C. § 1813, which gives discretion to the district judge in setting the conditions of bail. Section 1813 provides:

"The judges of the Trial Court of the Navajo Tribe are hereby authorized to impose conditions of a date of appearance and such other conditions upon bail as are necessary or proper."

A review of the tribal code sections addressing bail, reveals that bail was intended to include release from custody by either payment of a cash bond or personal recognizance release, and that the purpose of bail is to insure that the criminal defendant appear at any subsequent hearing. The discretion given to the district judge under Section 1813 authorizes the imposition of condition on release that bear a reasonable relationship to insuring defendant's appearance. These may include conditions such as requiring the defendant not leave the court's jurisdiction, or not to violate any tribal laws, or refrain from consumption of alcohol or other similar requirements. This Court fails to see any nexus between the district court's requirement, that Petitioner be relieved of his duties as Chief Justice, as a condition of release from custody, and how this condition in any way insures Petitioner's appearance at a subsequent hearing. Generally, the fact that a criminal defendant is employed is a factor justifying release on personal recognizance, and thus, it was an abuse of discretion to require a criminal defendant to leave his employment as a condition of release, as the Respondent has done in Petitioner's case.

Moreover, the district court exceeded its jurisdiction by ordering the Chief Justice of the Navajo Nation, a judge of a higher court, relieved from performing his judicial duties or exercising the judicial functions of his position during the pendency of the criminal proceeding as a condition of bail. In essence, the district court ordered, without authority, the suspension of the Chief Justice during the pendency of his criminal proceeding. No case decision nor any other legal authority can be found to justify removal or suspension of a superior court judge by a lower court. It is well settled that it is the superior court who possesses the authority to remove or suspend a lower court judge under the supervisory powers of an appel-

late court, and not the reverse as Respondent claims. 20 Am. Jur. 2d, Courts 111-117; 53 A.L.R. 3rd 882. In the Navajo judicial system, 7 N.T.C. § 303, clearly establishes the supervisory jurisdiction over the district courts in the Court of Appeals of the Navajo Nation, and the power to remove or suspend the Chief Justice rests solely with the Navajo Tribal Council, not with a district court judge. 7 N.T.C. § 352 specifically grants removal authority of the Chief Justice to the Navajo Tribal Council upon the recommendation of the Advisory Committee of the Navajo Tribal Council. It was the intent of the Council that it alone retains the power to remove the Chief Justice, and where the statute is specific, no other entity possesses that removal authority under its discretionary powers. Where the district court has exceeded its jurisdiction without legal authority to so act, the legal remedy of appeal is inadequate as a matter of law and issuance of a writ of prohibition to prevent further actions in excess of jurisdiction is proper. For these reasons, the Alternative Writ of Prohibition issued on March 27, 1985, restraining the Respondent from, in any way, restricting the Petitioner, as Chief Justice of the Navajo Nation, from performing the duties of his office is hereby made permanent.

Petitioner in his Application for the Writ of Prohibition has also requested that Respondent be disqualified from further participation in his criminal proceeding based upon Respondent's bias and prejudice preventing him from acting impartially. 7 N.T.C. § 303 grants the Court of Appeals supervisory jurisdiction or superintending control as the basis for interfering with an inferior court in the exercise of its jurisdiction where the lower court has departed from proper judicial activity or become dictatorial or oppressive in their conduct, thereby denying a party an impartial tribunal. A review of the proceedings below raises questions concerning the impartiality of the Respondent.

To begin, it appears that the Respondent failed to comply with the Rules of the Court regarding motions. New Rules of Pleading and Motion were adopted by the district judges on April 23, 1982. Rule 4 (d) of the rules requires that motions be made in writing and that copies of all motions filed with the court be served on the opposing party. The opposing party is then given five days from the date of receipt to file a response. The underlying purpose of these rules is to insure that notice is given to the parties prior to the Court's action on a motion, in conformity with basic notions of due process guaranteed under the Indian Civil Rights Act and the Navajo Bill of Rights. It is unclear from the district court's record who made the Motion for Modification of Personal Recognizance Release that was granted by Respondent on March 14, 1985, ordering Petitioner relieved from performing his judicial duties as Chief Justice of the Navajo Nation. No written notice was filed with the District Court, nor did the Respondent state in its Order of March 14, 1985, who made the Motion.

Given the requirements of Rule 4 (d), together with the due process protections guaranteed by the Indian Civil Rights Act, and the Navajo Bill of Rights, the Court at the very least should have provided notice to the Petitioner of the relief requested in the Motion, prior to granting it. Especially in view of the fact that the Motion requested change in the conditions of Petitioner's release, violations of which could result in his incarceration, and as stated earlier conditions beyond the lower court's authority to impose. In a case decided by this Court interpreting prior rules of motion that did not specifically require service of the motion on the opposing party, the Court nevertheless held that due process, at the very least, requires that a party receive a copy of a Motion and have an opportunity to respond before the matter could be decided by the district court. *Sweetwater Chapter v. Teec Nos Pos Chapter,* 2 Nav. R. 13, 14 (1979). Notably, Respondent participated in that decision as an Associate Justice of the Court of Appeals panel.

Procedural error alone is insufficient to warrant disqualification of a judge. However, in this case, Respondent's enforcement actions against Petitioner for violations of an order beyond the court's jurisdiction combine to prejudice the Petitioner and to raise a fair presumption that the Respondent is incapable of according the Petitioner a fair trial. To compound its already improper actions, and obviously in retaliation against Petitioner for issuing the Writ of Prohibition restraining the Respondent from further action in the criminal proceedings involving judicial personnel, Respondent nonetheless proceeded to enforce the modified release order by issuing an arrest warrant against the Petitioner. Respondent obviously wanted to insure Petitioner's incarceration during the weekend since the arrest warrant was not issued until 5:00 p.m. on Friday, March 22, 1985, but was unsuccessfully executed by tribal police officers on Sunday afternoon, March 24, at Petitioner's mother's residence.

Impartiality of the trial judge is a basic right of a criminal defendant. In the situation at hand, the actions of the Respondent in disregarding court rules of procedure designed to protect the due process rights of litigants, and then use of its enforcement power by means of an arrest warrant intended to result in Petitioner's incarceration over the weekend can only be characterized as oppressive and appear to be directed at Petitioner, for the sole reason that he is the Chief Justice and Respondent's superior. Were Petitioner any other individual, beside being the Chief Justice of the Navajo Nation, the personal recognizance release would have been sufficient to assure the Court that he would appear at any subsequent hearing, and thus, the Court's unauthorized modification of the release order and the enforcement tactics utilized leads this Court to conclude that Respondent is prejudiced against the Petitioner in the proceeding below.

Further, the legal remedy of appeal is inadequate in Petitioner's case.

Respondent has failed to rule on Petitioner's Motion to Disqualify despite this Court's modification of the Writ of Prohibition that narrowly restrained Respondent's actions, and gave Respondent ample opportunity to decide the disqualification issue. To remand this matter back to the district court for ruling on the Motion to Disqualify unnecessarily delays prosecution of the case and imposes additional time and expense on the parties, where Respondent's lack of impartiality is apparent from the records and where the result must be that of Respondent's disqualification. Should this case be remanded below and Respondent deny the Motion, then this issue will again be before this Court.

It is therefore ordered that Respondent is hereby disqualified from further participation in the criminal proceeding pending in the Tuba City District Court involving the Petitioner, and the Alternative Writ of prohibition is hereby modified to include this provision and is hereby made permanent.